MARTIN, Chief Judge.
A jury found defendant guilty of possession of cocaine and reckless driving. The trial court consolidated the offenses for judgment, imposed a suspended prison sentence of six to eight months, and placed defendant on twenty-four months of supervised probation. Defendant appealed.
At trial, the State presented evidence tending to show that at approximately 11:15 p.m. on 29 September 2002, defendant drove his pickup truck into two parked delivery vans in the parking lot of the Krispy Kreme Doughnut Store (Krispy Kreme) at the corner of Holly Tree Road and South College Road in Wilmington, North Carolina. City of Wilmington Police Officer Larry Zettlemaier responded to the scene and spoke to defendant and other witnesses. Zettlemaier found tire impressions sixty feet in length from the parking space where defendant had parked his truck to the delivery vans, reflecting defendant's route of travel prior to the collision. Defendant told Zettlemaier that he was waiting for his girl friend in the parking lot when an unknown black male approached his passenger's side door and asked him for a ride. When defendant refused, the man attempted to climb through the window into the truck. Defendant sped away from his parking space and collided with the delivery vans. Defendant, who was bleeding from a cut on the arm, also told Zettlemaier that he was stabbed during an altercation with the lone male following the collision. Judging from the damage to the vehicles as well as the deployment of the airbag in defendant's truck, Zettlemaier estimated defendant was traveling at a speed of thirty miles per hour when he struck the vans.
On the driver's side floorboard of defendant's truck, Zettlemaier found a small bag containing 3.3 grams of powder cocaine and a cellular telephone. Defendant denied any knowledge of the cocaine found in his vehicle.
A bystander who lived across from the Krispy Kreme on Holly Tree Road testified that she came out of her residence after hearing the crash and observed two black males emerge from a ditch across the street. The men ran to a sport utility vehicle (SUV) parked in front of the Holly Tree Condominiums and "drove off quickly" away from South College Road toward Shipyard Boulevard. When interviewed by police, Krispy Kreme employees reported seeing a group of four people run from the parking lot following the collision.
Defendant testified that he was waiting for his girl friend in the parking lot when a black male knocked on his passenger's side window. When defendant rolled down the window, the man asked him for a ride. After twice refusing the man's request, defendant put his truck's gear shift into drive. Unable to open the locked door, the man dove through the open window and attempted to enter the truck. With the man "basically in [his] lap," defendant accelerated out of his parking space. Because he was focused on the intruder, defendant did not look where he was driving and collided with the vans. Angered by the damage to his brand new truck, defendant exited the vehicle and chased the man to a fence near College Road. The man drew a knife and cut defendant on the arm and stomach before running away. Although defendant did not see the man throw the bag of cocaine into his truck, he also did not know how the drugs got there. He did not see anyone but his assailant.
Defendant argues on appeal that the trial court committed plain error in failing to instruct the jury on the doctrine of sudden emergency as a potential defense to the charge of reckless driving. He points to his own testimony that he drove his vehicle into the Krispy Kreme vans because he was focused on keeping the man out of his truck. In view of this evidence that he was engaged with a would-be carjacker, defendant avers the trial court's failure to instruct the jury ex mero motu on the doctrine of sudden emergency resulted in his conviction for reckless driving despite his lack of criminal intent, in violation of his constitutional right to present a defense under the Sixth and Fourteenth Amendments.
As defendant concedes, his failure to request an instruction on sudden emergency or to object to the trial court's jury instructions requires him to show plain error by the trial court. See N.C.R. App. P. 10(b)(2), (c)(4). "Generally, a plain error is one which is obvious, which affects the substantial rights of the accused, and which, if uncorrected, would be an affront to the integrity and reputation of judicial proceedings." State v. Thompson, 59 N.C. App. 425, 430, 297 S.E.2d 177, 181 (1982) (quotation omitted), disc. review denied, 307 N.C. 582, 299 S.E.2d 650 (1983).
Defendant has not identified a single instance in which the tort doctrine of sudden emergency has been incorporated into North Carolina criminal law by our appellate courts. Cf. State v. Glover, 156 N.C. App. 139, 144-45, 575 S.E.2d 835, 838 (2003) ("Although various civil cases have addressed the issue of sudden emergencies in relation to the reasonableness of a defendant's actions, defendant has failed to cite a single criminal case establishing such an exception specifically to G.S. § 20-146 (making it illegal to drive left of the center of a highway)."). Accordingly, we conclude he has not met the heavy burden of showing plain error. We decline to attribute plain error to a court based upon its failure to adopt, sua sponte, a novel application of law without any prompting from the parties and without any precedent to support such an application. To find plain error in this circumstance "would be departing from the fundamental requirements of the plain error rule of obviousness and apparentness of error." State v. Holbrook, 137 N.C. App. 766, 769, 529 S.E.2d 510, 511 (2000).
The record on appeal includes additional assignments of error not addressed by defendant in his brief to this Court. By rule, we deem them abandoned. See N.C.R. App. P. 28(b)(6).
No error.
Judges McCULLOUGH and CALABRIA concur.
Report per Rule 30(e).